# EXHIBIT A

# Semyon Kislin

April 29, 2014

31 pages

Semyon (Sam) Kislin v. Simon Dikker



**Precise Court Reporting**
**200 Old Country Road, suite 110**
**Mineola, New York 11501**

**Phone: 516-747-9393**
**212-581-2570**
**718-343-7227**
**Fax: 516-742-1288**
**precisecrs.com**

```
 1
 2    UNITED STATES DISTRICT COURT
 3    SOUTHERN DISTRICT OF NEW YORK
 4    ------------------------------------------------X
 5    SEMYON (SAM) KISLIN,
 6                                    Plaintiff,
 7                      -against-     14 Civ. 237 (PGG)
 8
 9    SIMON DIKKER and VADIM
      SACHKOV,
10                                    Defendants.
11                                            VOL I.
12    ------------------------------------------------X
13                          104 W. 40th Street
14                          New York, New York
15
16                          April 29, 2014
17                          1:25 P.M.
18
19                    DEPOSITION of SEMYON KISLIN, taken
20    pursuant to the Federal Rules of Civil Procedure, held
21    at the above-mentioned time and place before Christine
22    Slovak, a Notary Public of the State of New York.
23
24
25
```

```
 1
 2                  A P P E A R A N C E S :
 3
 4       KESTENBAUM, DANNENBERG & KLEIN, LLP
 5              Attorneys for Plaintiff SEMYON (SAM) KISLIN
 6              104 W. 40th Street (20th Floor)
 7              New York, New York 10018
 8       BY:   JEFFREY C. DANNENBERG, ESQ.
 9
10       ALEXANDER BERKOVICH, Attorney at Law
11              Attorney for Defendants
12              SIMON DIKKER and VADIM SACHKOV
13              184 Kent Avenue, Room D318
14              Brooklyn, New York 11249
15
16
17
18
19
20
21
22
23
24
25
```

1

2                    S T I P U L A T I O N S

3

4            IT IS HEREBY STIPULATED AND AGREED by and

5    among counsel for the respective parties hereto, that

6    the filing, sealing and certification of the within

7    deposition shall be and the same are hereby waived;

8

9            IT IS FURTHER STIPULATED AND AGREED that all

10   objections, except to the form of the question, shall

11   be reserved to the time of trial;

12

13           IT IS FURTHER STIPULATED AND AGREED that the

14   within deposition may be signed before any Notary

15   Public with the same force and effect as if signed and

16   sworn to by the Court.

17

18

19

20

21

22

23

24

25

4

```
 1                    S. Kislin
 2  S E M Y O N   K I S L I N, having first been duly sworn
 3  was examined and testified through the sworn
 4  interpreter as follows:
 5  EXAMINATION BY
 6  MR. BERKOVICH:
 7       Q.   Please state your name.
 8       A.   Semyon Kislin.
 9       Q.   Your home address.
10       A.   1965 Broadway, apartment PH1B, New York, New
11  York 10023.
12       Q.   Good afternoon, Mr. Kislin.
13            MR. BERKOVICH:  Before I start, Jeff, I would
14       like to mark three documents as exhibits.  I have
15       extra copy for myself, but I know you may want
16       more than one.  It's original for you to look at.
17            MR. DANNENBERG:  I can look at the copy you
18       give him but I'm going to want copies at the end.
19            MR. BERKOVICH:  Do you need to make copies
20       right now?  That's what I'm just trying to say.
21            MR. DANNENBERG:  Well, mark it.
22            MR. BERKOVICH:  Okay.  Three documents.
23       First is Summons and Complaint in this action.
24       Defendant's Exhibit A.
25            (Summons and Complaint was marked as
```

```
 1                         S. Kislin
 2     Defendant's Exhibit A for identification, as of
 3     this date.)
 4          MR. BERKOVICH:  Then the letter from
 5     Jeffrey Dannenberg to the judge in this case,
 6     dated March 28, 2014.  That will be Defendant's
 7     Exhibit B.
 8          (Letter from Jeffrey Dannenberg to the judge
 9     in this case, dated March 28, 2014 was marked as
10     Defendant's Exhibit B for identification, as of
11     this date.)
12          MR. BERKOVICH:  E-mail from
13     Jeffrey Dannenberg to Alexander Berkovich dated
14     August 26, 2013 with attached 2-page document in
15     Russian.  That will be Defendant's Exhibit C.
16          (E-mail from Jeffrey Dannenberg to Alexander
17     Berkovich dated August 26, 2013 with attached
18     2-page document in Russian was marked as
19     Defendant's Exhibit C for identification, as of
20     this date.)
21          MR. BERKOVICH:  Jeff, I apologize, but I do
22     not have sufficient copies.  Is it possible so I
23     have one set for myself as well?
24          MR. DANNENBERG:  Sure.
25          (A recess was taken.)
```

```
 1                        S. Kislin
 2        Q.    Good afternoon, Mr. Kislin.  My name is
 3   Alexander Berkovich, and I represent defendants in this
 4   lawsuit.  I'll ask you some questions and I would like
 5   you to consider my questions carefully and answer to
 6   the best of your knowledge.  At some point your
 7   attorney may object and you wait for the attorneys to
 8   finish the objection part, and then we'll see if you
 9   have to respond or not.
10        Have you ever been deposed in your life?
11        A.    Yes.
12        Q.    You're familiar with the process?
13        A.    Yes.
14        Q.    Let me ask you this, let me show you this
15   document.  Let me show you the document marked as
16   Plaintiff's Exhibit C which is E-mail from
17   Jeffrey Dannenberg to me, to Alexander Berkovich, dated
18   August 26, 2013.  Attached to that is a document.  I
19   don't know if this document was attached or not at this
20   point but tell me if you're familiar with the document
21   attached to this E-mail.
22             MR. DANNENBERG:  No.  You marked it as one
23        exhibit.
24             MR. BERKOVICH:  Right.
25             MR. DANNENBERG:  The document is the E-mail
```

```
 1                    S. Kislin
 2        and an attachment.
 3             MR. BERKOVICH:  I can ask him separately.
 4        Q.   Are you familiar with this E-mail?  Have you
 5   ever seen this E-mail before?
 6             MR. DANNENBERG:  It's a yes or no question.
 7             Have you ever seen the E-mail before?  You
 8        don't have to describe what it is.
 9        A.   I have not seen this document.
10        Q.   Are you aware without seeing the document
11   that Jeff Dannenberg wrote me this message?  Are you
12   aware that Jeff Dannenberg --
13        A.   Jeff Dannenberg told me.
14             MR. DANNENBERG:  Objection to the form.
15        A.   He told me.
16        Q.   If you look at the 2-page Russian document
17   attached to the E-mail, review it and tell me if you're
18   familiar with this.
19             MR. DANNENBERG:  It's just a yes or no
20        question.
21        A.   Yes, I know this document.
22        Q.   What is it?  Tell me.
23        A.   This document that Mr. Dikker owe me
24   $4 million or 254,600 -- exactly 254,556 bonds for
25   Solid Podmoskovnyi, P-O-D-M-O-S-K-O-V-N-Y-I.
```

8

1                      S. Kislin

2          MR. DANNENBERG:  Note for the record, this is

3      a document that's attached to an E-mail that

4      doesn't refer to an attachment and purports to be

5      am unexecuted document.

6      Q.   May I ask you this, is this a document upon

7  which you're basing this lawsuit?

8          MR. DANNENBERG:  Objection to the form.

9      A.   First of all, this is not a signed document.

10     Q.   We'll get to that.  This document, forget

11 about the signing part, is this document upon which

12 you're basing this lawsuit?

13 DI        MR. DANNENBERG:  Objection.  You know what,

14     objection to the scope because that's the

15     objection you gave this morning so what's good for

16     the goose and good for the gander.  I would direct

17     the witness not to answer; and by the way the

18     answer is no.  He's not basing this lawsuit on an

19     unexecuted document.

20         MR. BERKOVICH:  How about him testifying.

21         MR. DANNENBERG:  I've already directed him

22     not to answer.  Move on.

23     Q.   Do we have this document in executed form?

24     A.   Yes, I have this document signed.

25     Q.   Signed, executed.  Was this document signed

9

1                      S. Kislin

2   in Moscow?

3        A.   Was signed in Moscow, yes.

4        Q.   Let me rephrase my question.  The document is

5   in Russian; am I correct?

6            MR. DANNENBERG:  Yes, it's in Russian.  You

7        can see it's in Russian.

8            MR. BERKOVICH:  Jeff, please.  I have to be

9        able to ask questions.  It's not outside the

10       scope.

11           MR. DANNENBERG:  You need the witness to tell

12       you that that's in Russian language.

13           MR. BERKOVICH:  Yes, I want to have a record.

14           MR. DANNENBERG:  I stipulate the document in

15       front of him is in Russian.

16       A.   You want me to --

17           MR. DANNENBERG:  Sam, it's okay.  I'll do the

18       objecting.

19       Q.   Let me go back to my previous question.  The

20   document that you described that was signed in Moscow,

21   signed, unlike this one, was that a document upon which

22   you base this lawsuit?

23           MR. DANNENBERG:  Objection.  It goes beyond

24        the scope of the deposition.  The witness is

25        directed not to answer.

                              S. Kislin

1

2        MR. BERKOVICH:  I disagree.  I'll tell you

3        why.  I want to make a record of it.  The document

4        is in Russian language is a part of the scope of

5        this deposition.

6        MR. DANNENBERG:  I'll withdraw the objection.

7        Go ahead.

8        Q.  Is this a document upon which you're basing

9   this case?

10        MR. DANNENBERG:  Do you know whether this is

11        part of the basis of the lawsuit?

12        A.  Yes.

13        Q.  Are there any other documents in Russian

14   which form, in part, a basis for this lawsuit, other

15   than this document?

16        MR. DANNENBERG:  If you remember.

17        Q.  There's no other document in Russian?

18        A.  This is the only document.  We did in Russia

19   and before we signed this document, was negotiation in

20   my office in New York City --

21   MO        MR. BERKOVICH:  I object.  I move to strike.

22        A.  I'm telling.  I'm answering your question.

23        MR. BERKOVICH:  I move to strike.

24        MR. DANNENBERG:  Sam, he'll get to it.

25        Q.  My question is this, are there any other

1                        S. Kislin

2    documents in Russian other than the document you

3    described which is the signed agreement by both of you?

4    Other than that 2-page document in Russian, are there

5    any other documents in Russian which form, at least in

6    part, a basis for your claim here?

7              MR. DANNENBERG:  If you remember.

8         A.   I remember one document when I supply, invest

9    money in this business, it was in Russian.

10        Q.   There is another document in Russian?

11             MR. DANNENBERG:  Objection to the form.

12        A.   Yeah, there's another document in Russian was

13   signed it 2008 or 2007.  I don't remember exactly what

14   the document in Russian, same history.  Same document.

15   I mean different time.  Different year.

16        Q.   Besides those two documents, we identified

17   two documents, right?  This document meaning this one

18   in a signed form and the other document, are there any

19   other documents in Russian?

20        A.   I don't remember other documents.  It was

21   2001.  It was about 15 years ago.

22        Q.   My point is, are there any other --

23             MR. DANNENBERG:  Is it possible there were

24        other documents?

25        A.   Possible.  I don't know.  I don't have them.

```
 1                      S. Kislin
 2      Q.   You do remember at least two documents in
 3 Russian?
 4      A.   Yes.
 5      Q.   You testified earlier that this document that
 6 I showed you was signed and you have a signed copy?
 7      A.   Correct.
 8      Q.   The second document was signed as well?
 9      A.   Yes.
10      Q.   Was the second document also between you and
11 Mr. Dikker or somebody else's involvement?
12      A.   Yes, between me and Mr. Dikker.
13 RQ        MR. BERKOVICH:  I call for production of both
14      documents.
15           MR. DANNENBERG:  We'll take that request
16      under advisement.
17      Q.   Let me show you what has been marked as
18 Defendant's Exhibit A.  I don't have any questions.
19 I'm just showing it to you.  I'll ask you some
20 questions.
21      A.   For me --
22      Q.   I will ask a question.  Look at me.  Let me
23 ask you questions first, and then you'll know what to
24 do.
25           Please review the document and tell me if you're
```

1                          S. Kislin

2     familiar with it.  I don't mean to be impolite but it's

3     better if we go this way.

4              MR. DANNENBERG:  Just for the record, this is

5          a copy of the Summons and Complaint in this

6          lawsuit.

7          A.   This one I've been told, I didn't read it,

8     Complaint was sent to Federal District Court.

9          Q.   You understand that this is your Complaint in

10    this case?

11         A.   Yes.

12         Q.   Against Mr. Dikker and Mr. Sachkov?

13         A.   Correct.

14         Q.   I would bring your attention to Paragraph 13.

15    Please look at Paragraph 13.  If you look at the end of

16    the paragraph, last three lines, do you see the last

17    three lines of the paragraph?  It says, "As a result,

18    formal condition and discussion with plaintiff and

19    Dikker regarding the prospective transaction, plaintiff

20    agreed to accept 20 million as a buyer price for his

21    ownership interest in TRI;" do you see that?

22         A.   Yes.

23         Q.   If I understand correctly, when we earlier

24    discussed two Russian documents, the one which is the

25    signed version of Exhibit T and another second Russian

1                        S. Kislin

2    document said signed by you and Mr. Dikker a year

3    earlier or a year-and-a-half earlier, I understand you

4    don't remember the exact date.  Those documents refer

5    to the sum of $4 million dollars; am I correct?

6         A.   Correct.

7         Q.   Paragraph 13, it refers to $20 million?

8         A.   Yes.

9         Q.   Did you receive $16 million?

10        A.   Correct.

11        Q.   Did you have agreements within Russian

12   parties other than Mr. Dikker, other than Mr. Dikker,

13   any Russian parties with respect to those $16 million

14   dollars?

15             MR. DANNENBERG:  Objection to the form.

16        A.   I don't understand.

17        Q.   In any Russian parties, do you have any

18   agreements -- with respect to those $16 million, not 4,

19   16, did you have any agreements with any Russian

20   parties, Russian companies or Russian individuals, did

21   you have any agreements with them with respect to

22   $16 million other than Mr. Dikker?

23             MR. DANNENBERG:  Objection to the form.

24        Q.   Did you?

25        A.   He's objecting.

```
 1                         S. Kislin
 2            MR. DANNENBERG:  Object to the form.
 3            If you understand it, you can answer.
 4       A.   I make a deal with Mr. Dikker, only Dikker.
 5  I didn't make any agreement with anybody else.  Only
 6  with Mr. Dikker.
 7       Q.   Let me then phrase it differently.  Did you
 8  have a written agreement in Russian between you and
 9  Mr. Dikker with respect to those $16 million?
10            MR. DANNENBERG:  If you remember.
11       A.   $20 million.  It says $20 million.
12       Q.   Did you have a written agreement with respect
13  to $20 million?
14       A.   No, we make $20 million.  I don't remember
15  not written agreement.  I don't remember if I have
16  written agreement, but I make a deal for $20 million to
17  sell stock through Sachkov.
18       Q.   But the deal was with whom?  Between you and
19  whom?
20       A.   Between me and Dikker.
21       Q.   But you're saying there was no written
22  agreement with respect to $20 million?
23       A.   I don't remember.  Maybe I have.  I don't
24  remember.
25       Q.   It's a large sum of money, right?
```

```
 1                        S. Kislin
 2          MR. DANNENBERG:  He said he doesn't remember,
 3      all right.  You're being argumentative.
 4      Objection.  Argumentative.
 5          Next question.
 6          MR. BERKOVICH:  I don't think you should say
 7      that.
 8          MR. DANNENBERG:  Okay.  I said it.
 9          MR. BERKOVICH:  They're legal arguments.
10          MR. DANNENBERG:  You're giving him a hard
11      time because he doesn't remember.
12      Q.   You said you received $16 million?
13      A.   Correct.
14      Q.   Did you receive that $16 million from Russian
15  parties?
16      A.   No.  I receive from to Mr. Sachkov and
17  Dikker, but I don't know whose money I receive, Russian
18  party or English party or another party.  I don't know.
19      Q.   Is it fair to say that did you receive the
20  money personally or to your company?
21      A.   Through one of the companies.
22      Q.   Your Russian company?
23      A.   No.
24      Q.   Cyprus?
25      A.   I would not answer this question.
```

17

1                             S. Kislin

2              MR. DANNENBERG:  He doesn't remember.

3   RQ         MR. BERKOVICH:  With respect to current state

4             of discovery, I request production of any Russian

5             agreements regarding this matter.

6              MR. DANNENBERG:  What matter?

7              MR. BERKOVICH:  This lawsuit.  Russian

8             agreement.  He said there are two.  I ask him

9             questions about $20 million.  He doesn't remember.

10            I request you to search his records and provide if

11            there is a written agreement in Russian, provide

12            it to me.

13             MR. DANNENBERG:  We'll take the request under

14            advisement.  I'm not sure what you mean because

15            you're not being specific about documents.  You

16            want me to make a determination --

17             MR. BERKOVICH:  It's not true.  The witness

18            testified that he receives $20 million.

19             THE WITNESS:  No, I did not receive 20.

20             MR. BERKOVICH:  I apologize.  He said it was

21            agreement --

22             MR. DANNENBERG:  The lawsuit is about

23            $4 million not the 16.

24             MR. BERKOVICH:  The issues in this -- the

25            issue with respect to discovery affects everything

```
 1                        S. Kislin
 2        that was done in Russia.
 3            MR. DANNENBERG:  I told you we'll take the
 4        request under advisement.
 5            MR. BERKOVICH:  In terms of specificity, the
 6        witness testified that he had an agreement.  He
 7        didn't remember if he had it in writing.  I ask
 8        you to search for one in writing, particularly if
 9        he has one in Russian.
10            MR. DANNENBERG:  Do you want me to say one
11        more time that I'll take the request under
12        advisement?
13            MR. BERKOVICH:  No.  That's fine.  That's
14        fine.
15        Q.   Do you have any written agreements with
16   Mr. Sachkov regarding your claims in this case?
17            MR. DANNENBERG:  Objection to the form, but
18        you can answer it if you understand it.
19        A.   No.  Only verbal agreement.
20        Q.   Do you currently have an office in Moscow?
21        A.   No.
22        Q.   Did you have office in Moscow in the past?
23        A.   TRI office was my office.
24        Q.   Other than TRI offices, do you have any
25   others offices in Moscow?
```

1                           S. Kislin

2        A.    Not lately.

3        Q.    Ever?

4        A.    I used to have.

5        Q.    From what time to what time?

6        A.    Since 1991 to 1997.  1991 to 1997.

7        Q.    With respect to the period subsequent to

8   1997, subsequent to '97, I just want to make sure we

9   understand the timeframe, other than office of TRI, did

10  any of your companies have offices in Moscow?

11       A.    I had an office in Moscow, a company called

12  Transcommodities.  I used to have a company called

13  Branlow, B-R-A-N-L-O-W, Moscow.

14       Q.    Let's talk one at a time.  With respect to

15  Transcommodities, what timeframe did the company have

16  office in Moscow?

17       A.    Since 1991 to 1997 or '96.

18       Q.    Not after that?

19       A.    Not after this.

20       Q.    With respect to the other company Branlow,

21  what timeframe did it have offices in Moscow?

22       A.    I do have a company, but I don't have an

23  office.

24             MR. DANNENBERG:  He didn't have a physical

25       office.

```
1                          S. Kislin
2         Q.   The company never had an office in Moscow; am
3    I correct?
4         A.   Transcommodities has an office.
5         Q.   Branlow.
6         A.   Branlow never had a Moscow office.  Name of
7    company.
8         Q.   It's a Russian corporation; am I correct?
9         A.   A Russian corporation.
10        Q.   A legal entity?
11        A.   A legal entity.
12        Q.   Was Transcommodities also a Russian entity?
13        A.   No.
14        Q.   Other than Branlow, did you have any Russian
15   legal entities?
16        A.   No.
17        Q.   Have you over the years been a part owner of
18   any Russian legal entities?
19             MR. DANNENBERG:  Other than TRI you mean?
20             MR. BERKOVICH:  Well, it's included.  Of
21        course any of them.  I'm asking questions.
22        A.   Transcommodities and Branlow.
23        Q.   You said that was not Russian?
24        A.   Transcommodities was not Russian.  Branlow
25   was Russian.
```

S. Kislin

1

2      Q.   Any other companies other than Branlow that

3   were Russian?

4      A.   No.

5      Q.   Was Transregion Invest a Russian company?

6      A.   Yes.

7      Q.   You had interest in that company?

8      A.   Yes.

9      Q.   Were there any other Russian companies in

10  which you had interest; do you recall?

11     A.   No.  I mentioned before Branlow.

12     Q.   Other than ones you mentioned, any other?

13          MR. DANNENBERG:  He said no.  Not that he

14     recalls.

15     Q.   Have you been to Russia this year?

16     A.   Yes.

17     Q.   In Moscow?

18     A.   In Moscow.

19     Q.   How many times?

20     A.   Moscow, too.

21     Q.   How many times have you been to Moscow?

22          MR. DANNENBERG:   This year.

23     Q.   This year, 2014.

24     A.   Four or five times.

25     Q.   What's the total number of days if you can

1                          S. Kislin

2    recall approximately when you were in Russia, Moscow

3    specifically?

4         A.   This year?

5         Q.   This year, yes.

6         A.   Average a week per month.

7         Q.   Approximately five weeks, right?

8         A.   Yes.

9         Q.   What about the previous year, 2013, were you

10   in Moscow at all?  Let me rephrase.  Were you in Russia

11   in 2013?

12        A.   '15?

13        Q.   '13.

14        A.   Like every month.

15        Q.   So you were in Russia, you would go to Russia

16   every month?

17        A.   Every month.

18        Q.   But not for the whole month?

19        A.   No, usually from one week to three weeks.

20   From one week to three weeks.

21        Q.   Each trip was between one and three weeks and

22   pretty much every month?

23        A.   Pretty much.

24        Q.   What about the previous year, 2012?

25        A.   I'm traveling to Moscow to Russia and to

```
1                    S. Kislin
2   Europe for 40 years.  If you want to ask from 1972, I
3   will answer you from 1972 to today, but I don't
4   remember how many days I spent in 2013, 2012, 2011,
5   2010.  I do not remember but my answer is that I'm
6   traveling every month, almost every month.  I would say
7   ten times a year for sure.
8        Q.   Your trips are between one and three weeks?
9        A.   Yes.
10       Q.   It varies?
11       A.   It varies.
12       Q.   I'm sure you were not traveling to Soviet
13  Union from '72 to '92 probably, right?
14       A.   I started to travel in 1987.  From United
15  States to Soviet Union, I start to travel since 1987.
16  Since 1987.
17       Q.   Is it fair to say your trips to Russia are
18  business trips?
19       A.   Yes.
20       Q.   Let's go back to Exhibit C.  You don't need
21  to look at it.  Just as a reference, you testified that
22  the document attached to Exhibit C in a signed form was
23  signed by you and Mr. Dikker and you'll specify that
24  some earlier document was signed by you and Mr. Dikker.
25            MR. DANNENBERG:  He thought.  To the best of
```

```
 1                      S. Kislin

 2       his recollection.

 3            MR. BERKOVICH:  Yes.  His testimony is there.

 4       I'm not trying to trick him at all.  I'm just

 5       laying a foundation to my question.

 6            Q.   Did you use services for any Russian

 7   attorneys in connection with these agreements you had

 8   with Mr. Dikker?

 9            A.   No, I didn't use.  I used attorney from the

10   office attorney.  TRI used to have attorney in office.

11   Her name is Tatiana Renova.

12            MR. DANNENBERG:  R-E-N-O-V-A.

13            Q.   Just to make clear, you used her service in

14   connection with this agreement?

15            A.   Yes.  That's why this agreement was written

16   by her.

17            Q.   She drafted it?

18            A.   Yeah.

19            Q.   What about the previous agreement that you

20   think you may have?

21            A.   Same.  Just timing is different.

22            Q.   You did not use any other --

23            A.   No outside lawyers.

24            Q.   No outside attorneys or anything like that?

25            A.   No.
```

25

```
 1                        S. Kislin
 2        Q.   Let me ask you a broader question, in
 3   connection with this entire transaction which is a
 4   $20 million transaction, I can say that, right?
 5             MR. DANNENBERG:  The lawsuit is about a
 6        $4 million transaction; otherwise, you're
 7        mischaracterizing the claim.
 8             MR. BERKOVICH:  Let me ask a question, and
 9        then you'll answer.
10        Q.   In connection with a $20 million transaction,
11   not just this agreement with Mr. Dikker but the entire
12   $20 million transaction, you testified you had an
13   agreement but didn't believe it was a written
14   agreement, I'm talking about the $20 million, did you
15   use the services of any Russian attorneys in connection
16   with this transaction?
17             MR. DANNENBERG:  Objection to the form.
18             You can answer.
19        A.   First of all, agreement was for $30 million.
20   Agreement was.  Because it was not publicly sale
21   because it was not on the market Sachkov offered me
22   $20 million but Dikker, Mr. Dikker ask me here in
23   New York that he owes somebody $4 million.  He would
24   like to keep $4 million to pay someone else a company
25   but instead he gonna give me another bond or shares
```

1                        S. Kislin

2     whatever you call.

3            MR. DANNENBERG:   Sam, you're way beyond the

4        question.

5        Q.   The question is, did you use services in

6     connection, I understand about what you described,

7     about $30 million versus $20 million?  Whether it's a

8     $30 million or $20 million transaction, it's your

9     words.  I'm not going to challenge that.  Did you use

10    service of any Russian attorneys?

11       A.   No.

12       Q.   Did you ask for legal advice in Russia?

13       A.   No, I trust Mr. Dikker.

14       Q.   Did you use services of

15    Mr. Jeffrey Dannenberg?

16       A.   No.

17       Q.   How long have you known Mr. Dannenberg?

18            THE WITNESS:   How long I know you?

19            MR. DANNENBERG:   A long time.

20       A.   Long time.

21       Q.   Years.  How long ago have you met?

22       A.   A long time.

23       Q.   20 years, 10 years, 15 years?

24       A.   A long time.

25       Q.   It was before this transaction you knew him,

1                          S. Kislin

2    right?

3         A.   Yes.

4         Q.   In connection with this transaction, whether

5    it's 20 or $30 million, I'm not going to argue, did you

6    have any -- other than those two agreements you

7    referred to in Russian signed by you and Mr. Dikker, do

8    you have written agreements with anyone?

9              MR. DANNENBERG:  On what subject?

10             MR. BERKOVICH:  With respect to this

11        transaction.  Him being bought out.

12             MR. DANNENBERG:  Objection to the form; but

13        if you understand, you can answer.

14             Do you remember anything else?

15        A.   I don't remember anything.

16        Q.   For example, you may have answered it, but

17   I'll ask it again, did you have any written agreement

18   with Mr. Sachkov?

19             MR. DANNENBERG:  He did answer.  Asked and

20        answered.  He said he didn't remember any.

21        Q.   Did you have any agreements with any

22   companies which Mr. Sachkov had management interest?

23        A.   No.

24        Q.   Or any real estate funds in Russia?  Any

25   agreements with that?

```
1                         S. Kislin
2       A.    No.
3       You should prepare this answer before.
4       Q.    This is a formal proceeding, Mr. Kislin.
5             MR. BERKOVICH:   I don't have any further
6       questions at this time.
7                      (TIME NOTED:   2:08 P.M.)
8
9             _____
                           SEMYON KISLIN
10
11      Subscribed and sworn to before me
12      this _____ day of _____, 2014.
13
14            _____
                           NOTARY PUBLIC
15
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2                                INDEX
 3   DEFENDANT'S
 4   EXHIBITS          DESCRIPTION                      PAGE
 5       A             Summons and Complaint              4
 6       B             Letter from Jeffrey Dannenberg     5
 7                     to the judge in this case,
 8                     dated March 28, 2014
 9       C             E-mail from Jeffrey Dannenberg to  5
10                     Alexander Berkovich dated
11                     August 26, 2013 with attached 2-page
12                     document in Russian
13       REQUESTS                                       PAGE
14   1.  Production of two signed documents in Russian  12
15   2.  Production of any Russian agreements regarding 17
16       this matter
17
18   DI (Page 8)
19   MO (Page 10)
20
21
22
23
24
25
```

```
 1
 2                  C E R T I F I C A T E
 3        I, Christine Slovak, a Shorthand Reporter and
 4   Notary Public of the State of New York, do hereby
 5   certify:
 6        That the witness whose examination is hereinbefore
 7   set forth, was duly sworn, and that such examination is
 8   a true record of the testimony given by such witness.
 9        I further certify that I am not related to any of
10   the parties to this action by blood or marriage; and
11   that I am in no way interested in the outcome of this
12   matter.
13        IN WITNESS WHEREOF, I have hereunto set my hand
14   this 13th day of May, 2014.
15
16
17
18                        _____
                                   Christine Slovak
19
20
21
22
23
24
25
```

```
1
2                          ERRATA SHEET
3          I wish to make the following changes, for the
4    following reasons:
5    PAGE        LINE
6    _____     _____          CHANGE:_____
7                                  REASON:_____
8    _____     _____          CHANGE:_____
9                                  REASON:_____
10   _____     _____          CHANGE:_____
11                                 REASON:_____
12   _____     _____          CHANGE:_____
13                                 REASON:_____
14   _____     _____          CHANGE:_____
15                                 REASON:_____
16   _____     _____          CHANGE:_____
17                                 REASON:_____
18   _____     _____          CHANGE:_____
19                                 REASON:_____
20   _____     _____          CHANGE:_____
21                                 REASON:_____
22   _____     _____          CHANGE:_____
23                                 REASON:_____
24   _____     _____          CHANGE:_____
25                                 REASON:_____
```