# EXHIBIT C

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

| | | |
|---|---|---|
| SEMYON (SAM) KISLIN | ) | |
| *Plaintiff* | ) ) ) | |
| v. | ) | Civil Action No. |
| SIMON DIKKER and VADIM SACHKOV | ) ) ) | |
| *Defendant* | ) | |

14 CV 237

JUDGE GARDEPHE

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Simon Dikker
70 Sunset Court
Mahweh, NJ 07430

Vadim Sachkov
15901 Collins Avenue (Unit 1101)
Sunny Isles Beach, FL 33160

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

KESTENBAUM, DANNENBERG & KLEIN, LLP
104 West 40th Street (20th Floor)
New York, NY 10018
(212) 486-3370

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

RUBY J. KRAJICK

CLERK OF COURT

Date:  01/13/2014

*Signature of Clerk or Deputy Clerk*

14 CV 237

JUDGE GARDEPHE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

SEMYON (SAM) KISLIN,

                Plaintiff,

    v.

SIMON DIKKER and VADIM SACHKOV,

                Defendants.

-----------------------------------------------------------------x

14 CIV.

COMPLAINT

RECEIVED JAN 13 2014 U.S.D.C. S.D.N.Y. CASHIERS

       Plaintiff, Semyon (Sam) Kislin, by his attorneys, Kestenbaum, Dannenberg & Klein, LLP, as and for his Complaint in the above-entitled action, alleges as follows:

## ALLEGATIONS REGARDING THE
## PARTIES, JURISDICTION AND VENUE

       1.     Plaintiff is a U.S. citizen and resides in the City, County and State of New York.

       2.     Upon information and belief, defendant Simon Dikker ("Dikker") is a U.S. citizen and resides in the Town of Mahwah, County of Bergen, State of New Jersey.

       3.     Upon information and belief, defendant Vadim Sachkov ("Sachkov") is a citizen of the Russian Federation and has residences in Sunny Isles Beach, Florida, in Moscow, Russia.

       4.     This is an action for money damages in excess of $75,000.00, exclusive of interest and costs, and is between citizens of different States, and in which a citizen or subject of a foreign state is an additional party.

5.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(3).

6.  Venue lies in this district, pursuant to 28 U.S.C. § 1391(a)(2) and/or (3), as the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred and the judicial district in which defendants are subject to personal jurisdiction.

## ALLEGATIONS COMMON TO BOTH CLAIMS

7.  In or about 2002, plaintiff, Dikker and a third individual, Sergey Parilis ("Parilis," who, like Dikker, resides in the State of New Jersey) formed a Russian joint stock company named JSC Transregioninvest ("TRI"), which for many years thereafter had offices in Moscow, Russia, and which engaged in the business of acquiring and developing real property located in what is known as the "Moscow region" -- that is, the territory within a radius of approximately 200-300 kilometers outside of the City of Moscow.

8.  At all relevant times, plaintiff (either directly or through an entity that he controlled) owned 51% of the issued and outstanding shares of TRI, while Dikker and Parilis (either directly or through entities that they controlled) each owned 24½ % of TRI's shares.

9.  Following TRI's establishment, Dikker divided his time between his home in New Jersey and TRI's offices in Moscow, where he managed TRI's day-to-day operations.

10. At all relevant times, plaintiff did business at his office location in the City, County and State of New York, travelling to Moscow periodically to oversee TRI's operations, but communicating with Dikker and Parilis regarding TRI's management and operations principally either by telephone or at meetings in plaintiff's New York City office.

11.  In or about 2007, plaintiff began to raise a number of concerns over, and objections to, the manner in which Dikker was conducting TRI's business operations, which culminated in a series of discussions in which Dikker proposed to buy out plaintiff's 51% interest in TRI.

12.  Although plaintiff and Dikker initially agreed upon a valuation of plaintiff's interest in TRI in the amount of $30 million, Dikker represented that he was unable to pay that sum out of his own funds, and he proposed to make payment out of the sale of a portion of a bond-holding interest that TRI held in a land management fund operated by a Russian joint-stock company known as JSC Solid Management. (Hereinafter, the land fund is referred to as the "Solid Fund," and the joint-stock company is referred to as "Solid Management.")

13.  Sachkov, who was the representative of Solid Management who worked with Dikker in the management of TRI's investment holdings with the Solid Fund, thereafter represented to plaintiff that there was not an immediate market for any portion of TRI's bond-holding interest in the Solid Fund sufficient to generate any more than $20 million; as a result, following additional discussions between plaintiff and Dikker regarding the prospective transaction, plaintiff agreed to accept $20 million as the buy-out price for his ownership interest in TRI.

14.  In connection with Dikker's plan to sell a portion of TRI's bond-holding interest in the Solid Fund sufficient to pay plaintiff the sum of $20 million, as set forth above, Sachkov told plaintiff that he (Sachkov) would act as plaintiff's agent for the sale, with any fees or expenses that would be incurred for such services to be the responsibility of either TRI or the buyer of the shares.

15. Thereafter, plaintiff was informed by Dikker and Sachkov that the above-referenced sale of shares in the Solid Fund had been made, and that he would receive the $20 million to which he had been promised, provided that he transfer to TRI his 51% interest in the company, which he thereafter did.

16. However, plaintiff subsequently received only $16 million, rather than the $20 million that he had been promised by Dikker. With regard to the unpaid balance of $4 million that Dikker owed to plaintiff, Dikker and Sachkov told plaintiff that the funds had been diverted, without plaintiff's consent or authorization, to a third party in order to pay off an unrelated debt that Dikker owed.

17. Nevertheless, Dikker acknowledged to plaintiff that, as a result of the personal use he had made of plaintiff's funds, he (Dikker) personally owed $4 million to plaintiff, which obligation he proposed to satisfy through the transfer to plaintiff of 254,556 shares, or bonds, that Dikker said he owned in a Russian joint-stock company known as ZPIF Solid-Podmoskovnyi ("Solid Podmoskovnyi"), and plaintiff expressed a willingness to accept those shares in satisfaction of Dikker's obligation.

18. Although Dikker and Sachkov initially represented to plaintiff that the 254,556 shares in Solid Podmoskovnyi had been transferred to plaintiff's ownership, that was untrue, and no such transfer was ever made.

19. Ultimately, Dikker and Sachkov told plaintiff that poor financial conditions in late 2008 and early 2009 had caused a devaluation of Solid Podmoskovnyi's shares, as a result of which Dikker's $4 million obligation to plaintiff would have to be satisfied by Dikker's sale of some other investment shares.

## FIRST CLAIM FOR RELIEF
(Against Dikker, for Conversion)

20. At no time did Dikker have any right, title, lien or interest in the $4 million in funds that had been allocated to plaintiff from the sale of a portion of TRI's bond-holding interest in the Solid Fund, but which was, instead, diverted to a third party to pay off an unrelated debt owned by Dikker.

21. Dikker's exercise of dominion and control over plaintiff's funds, together with Dikker's refusal to return them to plaintiff notwithstanding due demand, constituted a conversion of the funds to Dikker's own use.

22. As a result of the foregoing, plaintiff has been damaged in the amount of $4,000,000.00, no part of which has been paid.

## SECOND CLAIM FOR RELIEF
(Against Sachkov, for Aiding and Abetting)

23. Plaintiff repeats and realleges the allegations set forth in paragraphs 20 and 21 above, as though the same were more fully set forth herein.

24. By knowingly participating in the Dikker's aforesaid conversion of plaintiff's funds, Sachkov was liable for aiding and abetting in the wrongdoing.

25. As a result of the foregoing, plaintiff has been damaged in the amount of $4,000,000.00, no part of which has been paid.

### THIRD CLAIM FOR RELIEF
### (Against Sachkov, for Breach of Fiduciary Responsibilities)

26. Plaintiff repeats and realleges the allegations set forth in paragraphs, 20, 21, and 24 above, as though the same were more fully set forth herein.

27. By virtue of his responsibilities as plaintiff's agent in the sale of a portion of TRI's bond-holding interest in the Solid Fund, Sachkov was vested with fiduciary duties of the highest care and loyalty to plaintiff.

28. In breach of those fiduciary duties, Sachkov failed and refused, and continues to fail and refuse, to turn over to plaintiff the $4 million in converted funds, although such turnover has been duly demanded by plaintiff.

29. As a result of the foregoing, plaintiff has been damaged in the amount of $4,000,000.00, no part of which has been paid.

### FOURTH CLAIM FOR RELIEF
### (Against Dikker, for Breach of Contract)

30. Following numerous discussions in 2009 between plaintiff and, at various times, Dikker and Sachkov, including discussions that took place both by telephone and in plaintiff's New York City office, plaintiff and Dikker entered into a written agreement, dated November 12, 2009 (the "2009 Agreement"), pursuant to which Dikker promised to fund the payment of his $4 million obligation to plaintiff through some combination of (a) Dikker's share of the proceeds from sales in another real property development venture in which plaintiff and Dikker were involved, known as the "Gzhel project," and (b) the transfer to plaintiff no later than December 31, 2009 of shares in a Russian joint-stock company known as SPIFH Russkoe Pole

("Russkoe Pole"), in place of the shares to which plaintiff had been promised in Solid Podmoskovnyi.

31.   Notwithstanding the promise that Dikker had made in the 2009 Agreement, he neither (a) paid to plaintiff any proceeds from his share of the Gzhel project, (b) transferred to plaintiff any shares in Russkoe Pole, nor (c) satisfied through any other means any part of his $4 million debt to plaintiff.

32.   By subsequent written agreement, dated September 18, 2012 (the "2012 Agreement"), again following numerous discussions between plaintiff and, at various times, Dikker and Sachkov – and again, including discussions that took place both by telephone and in plaintiff's New York City office – Dikker renewed his promise to satisfy his $4 million obligation to plaintiff through some combination of (a) proceeds from sales in the "Gzhel" project, and (b) the transfer to plaintiff – this time, by May 1, 2013 – of shares in Russkoe Pole.

33.   In breach of the 2012 Agreement, Dikker failed to pay any money to plaintiff or to transfer to plaintiff any shares in Russkoe Pole.

34.   As a result of the foregoing, plaintiff has been damaged in the amount of $4,000,000.00, no part of which has been paid.

### FIFTH CLAIM FOR RELIEF
(Against Both Defendants, for Fraud)

35.   Plaintiff repeats and realleges the allegations set forth in paragraphs 30 through 33 above, as though the same were more fully set forth herein.

36.   During the period from 2009 through 2012, Sachkov was aware of Dikker's $4 million obligation to plaintiff, as well of Dikker's various proposals to satisfy that

7

obligation – first through the sale of TRI's bond-holding interest in the Solid Fund, then through the transfer to plaintiff of shares purportedly owned by Dikker in Solid Podmoskovnyi, and later through the transfer to plaintiff of shares purportedly owned by Dikker in Russkoe Pole.

37. Also during that period, Dikker and Sachkov represented to plaintiff at various times that (a) Dikker did, in fact, have ownership rights to shares in Solid Podmoskovnyi and Russkoe Pole, in sufficient number and liquidity to satisfy Dikker's $4 million obligation to plaintiff, and (b) plaintiff need not take any actions to enforce that obligation, inasmuch as they (Dikker and Sachkov) would ensure the transfer to plaintiff of 254,556 shares in Solid Podmoskovnyi, or (later) of the equivalent number of shares in Russkoe Pole.

38. At the time that Dikker and Sachkov made the foregoing representations to plaintiff, they knew them to be false, in the sense that, regardless of whatever rights Dikker may have had to shares in Solid Podmoskovnyi or Russkoe Pole, the liquidation of those holdings would likely become impossible through the passage of time, inasmuch as, at the same time that Dikker and Sachkov were making the above-referenced representations to plaintiff, they were also working directly with one another to sell, or to allow for borrowing against, other shares that Dikker owned in Solid Podmoskovnyi and/or Russkoe Pole for Dikker's own account – or to satisfy other debts that Dikker had – which sale or borrowing would render illiquid the shares that had been promised to plaintiff.

39. Furthermore, based upon the provisions of the 2012 Agreement, Sachkov represented to plaintiff that the shares to which plaintiff had been promised in Russkoe Pole would not be available for transfer to plaintiff until approximately six months later, whereupon he (Sachkov) would have them registered in plaintiff's name; however, plaintiff after that

8

Agreement was signed learned that the Russkoe Pole shares had been available for transfer as much as two years earlier.

40. In any event, the shares never were transferred to plaintiff.

41. Dikker and Sachkov made the foregoing representations to plaintiff, in coordination with one another, to induce plaintiff to take no action to enforce Dikker's obligation, or to interfere with Dikker's and Sachkov efforts to sell, on Dikker's own account, of Dikker's shares in Solid Podmoskovnyi and Russkoe Pole.

42. In reliance upon the foregoing misrepresentations by Sachkov, plaintiff did, in fact, delay and forebear upon taking any action to enforce Dikker's obligation.

43. Upon information and belief, but for Dikker's and Sachkov's misrepresentations to plaintiff, plaintiff would have been able to collect the $4 million obligation owed to plaintiff by Dikker.

44. As a result of the foregoing, plaintiff has been damaged in the amount of $4,000,000.00, no part of which has been paid.

## JURY DEMAND

45. Plaintiff requests a trial by jury.

**WHEREFORE**, plaintiff respectfully demands judgment against each of the defendants in this action, jointly and severally, for (i) money damages in the sum of $4,000,000.00, plus appropriate pre-judgment interest, and (ii) such other and further relief as to this Court may seem just and proper, including the costs and disbursements of this action.

Dated: January 13, 2014

        KESTENBAUM, DANNENBERG & KLEIN, LLP
        Attorneys for Plaintiff

        By: _____
            Jeffrey C. Dannenberg (JD-3270)

        104 West 40th Street (20th Floor)
        New York, NY 10018
        (212) 486-3370
        Email: jdannenberg@kdklaw.com