UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -:
SEMYON (SAM) KISLIN,                   :        14 Civ. 237 (PGG)(JCF)
                                       :
                Plaintiff,             :            REPORT AND
                                       :         RECOMMENDATION
      - against -                      :
                                       :
SIMON DIKKER and VADIM SACHKOV,        :
                                       :
                Defendants.            :
- - - - - - - - - - - - - - - - - - -:

TO THE HONORABLE PAUL G. GARDEPHE, U.S.D.J.:

    This is a diversity action brought by Semyon (Sam) Kislin, against Simon Dikker and Vadim Sachkov.  Mr. Dikker moves to dismiss on the basis of _forum non conveniens_.  For the reasons that follow, I recommend that the motion be denied.

Background

    The plaintiff, the defendant, and a third individual not party to this lawsuit co-owned and operated TransRegionInvest ("TRI"), a Russian joint stock company, from around 2002 to around 2007. (Declaration of Semyon Kislin dated July 25, 2014 ("Kislin Decl."), ¶¶ 10, 21; Declaration of Simon Dikker dated June 9, 2014 ("Dikker Decl."), ¶ 3).  During this time, Mr. Kislin owned 51% of outstanding shares, while Mr. Dikker owned 24.5%.  (Kislin Decl., ¶ 10; Dikker Decl., ¶ 3).

    Mr. Kislin alleges that he and Mr. Dikker agreed that Mr. Dikker would buy Mr. Kislin's ownership interest in TRI at a price

1

of $20 million.  (Kislin Decl., ¶ 16).  They arranged for the sum to be paid through the sale of TRI's interest in a land management fund operated by JSC Solid Management.  (Kislin Decl., ¶ 16).  Mr. Kislin received only $16 million of the agreed upon $20 million (Kislin Decl., ¶ 20), and he and Mr. Dikker subsequently agreed that the outstanding $4 million would be paid between December 2009 and May 2010 in shares in the Russkoye Polye fund (Kislin Decl., ¶ 24).  A written acknowledgment of this agreement was prepared in Russian by Tatiana Runova, corporate counsel for TRI.  (Kislin Decl., ¶ 24).  In November 2012, with the $4 million still unpaid, Mr. Kislin and Mr. Dikker agreed to extend the deadline for the outstanding payment to May 2013.  (Kislin Decl. ¶ 26).  Ms. Runova memorialized the new agreement, which was then faxed to Mr. Kislin's New York City office for his signature.  (Kislin Decl., ¶ 26).

Around August 2013, TRI's computers and records were all confiscated or destroyed by Moscow police.  (Kislin Decl., ¶ 27; Deposition Testimony of Simon Dikker ("Dikker Dep."), attached as Exh. 2 to Declaration of Jeffrey C. Dannenberg dated August 1, 2014 ("Dannenberg Decl."), at 28-29).  Mr. Dikker purportedly left Russia out of fear that he would be arrested.  (Kislin Decl., ¶ 27; Dikker Dep. at 71-72).

Mr. Kislin, who resides in New York (Kislin Decl., ¶ 3), filed

this action against Mr. Dikker and Vadim Sachkov on January 13, 2014, in the Southern District of New York.  Mr. Sachkov has since been voluntarily dismissed from the case without prejudice. (Notice of Voluntary Dismissal as Against Defendant Sachkov pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) dated June 9, 2014). The remaining claims against Mr. Dikker are for conversion (Compl., ¶¶ 20-22), breach of contract (Compl., ¶¶ 30-34), and fraud (Compl., ¶¶ 35-44).

Mr. Dikker, who resides in New Jersey (Dikker Decl., ¶ 2), moved on August 25, 2014 to dismiss the action on the ground of <u>forum non conveniens</u>, maintaining that the more convenient and appropriate forum for this action is Moscow.

<u>Discussion</u>

"'The principle of <u>forum non conveniens</u> is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute.'" <u>Norex Petroleum Ltd. v. Access Industries Inc.</u>, 416 F.3d 146, 153 (2d Cir. 2005) (quoting <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 507 (1947)).  The determination of whether to dismiss on the ground of <u>forum non conveniens</u> is "committed to the sound discretion of the trial court." <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 257 (1981).

The Second Circuit applies a three-step analysis, laid out in

Iragorri v. United Technologies Corp., 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc), to guide the exercise of that discretion.

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum.  At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute.  Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

Norex Petroleum, 416 F.3d at 153 (internal citations omitted) (citing Iragorri, 274 F.3d at 73-74).  "[U]nless the balance [of interests] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil, 330 U.S. at 508.  "The defendant has the burden to establish that an adequate alternative forum exists and then to show that the pertinent factors tilt[] strongly in favor of trial in the foreign forum." Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 100 (2d Cir. 2000) (alteration in original) (internal quotation marks omitted).  "The action should be dismissed only if [the plaintiff's] chosen forum is shown to be genuinely inconvenient and [the defendant's] selected forum significantly preferable." Iragorri, 274 F.3d at 74-75.

    A.   Deference to Plaintiff's Choice of Forum

"A court reviewing a motion to dismiss for forum non conveniens should begin with the assumption that the plaintiff's choice of forum will stand . . . ." Iragorri, 274 F.3d at 71.

4

However, "'the degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale' depending on the degree of convenience reflected by the choice in a given case." <u>Norex Petroleum</u>, 416 F.3d at 154 (quoting <u>Iragorri</u>, 274 F.3d at 71).  A plaintiff's choice of forum is "generally entitled to great deference when the plaintiff has sued in the plaintiff's home forum" because "it is presumed to be convenient." <u>Iragorri</u>, 274 F.3d at 71.  By contrast, "the choice of a United States forum by a foreign plaintiff is entitled to less deference" because "[i]n such circumstances, a plausible likelihood exists that the selection was made for forum-shopping reasons." <u>Id.</u>

Courts consider several factors in addition to the residence of the plaintiff in assessing the degree of deference owed to the plaintiff's choice of forum.  These factors include the "availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." <u>Id.</u> at 72.  "The more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for forum non conveniens."[1] <u>Id.</u>  "On

---

[1] While both the first and third steps of <u>Iragorri</u> analysis consider the convenience of the chosen forum, the two  inquiries

the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands . . . ." Id. Forum-shopping reasons include:

> attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, [and] the inconvenience and expense to the defendant resulting from litigation in that forum.

Id.

In the present case, the plaintiff has been a resident of New York City since 1985 and a United States citizen since the 1970s. (Kislin Decl., ¶ 3). While Mr. Kislin regularly travels to Russia and other countries on business (Kislin Decl, ¶¶ 12-13; Transcript of Deposition Testimony of Semyon Kislin dated April 29, 2014 ("Kislin Dep."), attached as Exh. A to Declaration of Alexander Berkovich dated June 9, 2014, at 22-23), he works primarily out of New York City (Kislin Decl., ¶¶ 5-6) and does not have an office in

---

are distinct. In the first step, the court asks only whether the chosen forum appeared convenient to the plaintiff at the time of filing, in order to ascertain whether the plaintiff's choice of forum was motivated by convenience rather than by a desire to engage in forum-shopping. See Iragorri, 274 F.3d at 72. In the third step, the court considers the convenience of the chosen and proposed alternative fora from the perspectives of both parties, in order to determine whether the chosen forum is "genuinely inconvenient" and the proposed alternative forum "significantly preferable." See id. at 74-75.

Moscow (Kislin Dep. at 18-19).   While the defendant asserts that
New York is merely Mr. Kislins's "nominal residence" (Dikker Decl.,
¶ 13), there is no indication that Mr. Kislin has another residence
in Moscow (Dikker Decl., ¶¶ 13, 15).   The fact that New York City
is Mr. Kislin's home forum indicates that his choice of forum is
entitled to great deference.[2]   See Iragorri, 274 F.3d at 71.

   The other relevant factors also weigh in favor of according
Mr. Kislin's choice of forum great deference.   Mr. Dikker has not
moved to dismiss on personal jurisdiction grounds, indicating his
amenability to suit in this forum.[3]   No evidence has been put

_____

   [2] The defendant urges the court to apply the rule stated in
Flex-N-Gate Corp. v. Wegen, No. 08 Civ. 2502, 2008 WL 5448994, at
*3 (S.D.N.Y. Dec. 29, 2008), and recently relied upon in Kuehne &
Nagel, Inc. v. A.G.R. Eshcol Overseas, Ltd., No. 10 Civ. 8919, 2014
WL 4059821, at *5 (S.D.N.Y. Aug. 15, 2014), that "the deference due
an American plaintiff is diminished where plaintiff is a
corporation doing business abroad and can expect to litigate in
foreign courts." (Letter of Alexander Berkovich dated Aug. 22,
2014).   This rule is inapplicable to the instant case.   The
plaintiff here is an individual, not a corporation (let alone a
corporation with "more than 1000 offices in over 100 countries,"
Kuehne & Nagel, 2014 WL 4059821, at *5 (internal quotation marks
omitted)).   That Mr. Kislin, a resident of this forum, frequently
engages in business abroad does not defeat the presumption that his
forum choice was motivated by convenience.

   [3] At the time the case was filed, it was not clear that Mr.
Dikker would be amenable to suit in Moscow, as he has not lived
there since 2013 and was believed by the plaintiff to be unwilling
to return there (Kislin Decl., ¶¶ 27-28; Dikker Dep. at 71-72); not
until Mr. Dikker filed the motion to dismiss did he indicate that
he would consent to the jurisdiction of a Moscow court.   (Dikker
Decl., ¶ 18).   This, too, weighs in favor of deference to Mr.
Kislin's forum choice.   See Iragorri, 274 F.3d at 73 ("A plaintiff
should not be compelled to mount a suit in a district where she

forward that Mr. Kislin gains any tactical advantage under local laws,[4] that Mr. Dikker is unpopular in this forum, or that the forum was chosen with the goal of inconveniencing Mr. Dikker -- all factors that would weigh against deference to Mr. Kislin's choice of forum.  See Iragorri, 274 F.3d at 72.  In fact, Mr. Kislin's choice of forum requires Mr. Dikker to travel only roughly one hour from his home.  (Defendant Simon Dikker's Reply Memorandum of Law ("Reply Memo.") at 8).  Mr. Kislin's attorneys are based in New York City (as are Mr. Dikker's).  Even assuming, as Mr. Dikker maintains, that several "necessary" witnesses currently reside in Russia (Dikker Decl., ¶ 14), the balance of these factors indicates that Mr. Kislin's choice of forum was motivated by convenience, not forum shopping.  Therefore, based on the Iragorri court's "sliding scale" factors, 274 F.3d at 71-72, Mr. Kislin's choice of this forum should be accorded great deference.

B.   Adequacy of Alternative Forum

Analysis of the level of deference owed to the plaintiff's choice of forum is "only the first level of inquiry," id. at 73, and "simply recalibrate[s] the balance for purposes of the

_____

cannot be sure of perfecting jurisdiction over the defendant, if by moving to another district, she can be confident of bringing the defendant before the court.").

[4] In fact, Mr. Dikker contends that Russian law, not local law, will govern this litigation.  (Defendant Simon Dikker's Memorandum of Law ("Def. Memo.") at 13).

remaining analysis," Norex Petroleum, 416 F.3d at 157.  The court must next consider whether Moscow is an "adequate alternative forum."

It is well settled that a forum non conveniens motion "may not be granted unless an adequate alternative forum exists."  In re Arbitration Between Monegasque De Reassurances S.A.M., 311 F.3d 488, 499 (2d Cir. 2002).  Therefore, "[t]o secure dismissal of an action on grounds of forum non conveniens, a movant must demonstrate the availability of an adequate alternative forum." Norex Petroleum, 416 F.3d at 157.  "'An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits the litigation of the subject matter of the dispute.'" Id. (quoting Pollux Hodling Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 75 (2d Cir. 2003)).

Mr. Dikker has consented "to the jurisdiction of an appropriate court in Moscow," should the case be dismissed. (Dikker Decl., ¶ 18).  Such consent is generally sufficient to satisfy the first prong of the adequate alternative forum requirement.  DiRienzo v. Phillip Services Corp., 232 F.3d 49, 57 (2d Cir. 2000), vacated in part on other grounds, 294 F.3d 21 (2d Cir. 2002).  While Mr. Kislin expresses concern that Mr. Dikker's statement of consent is disingenuous, as he would risk criminal prosecution were he to return to Russia (Kislin Decl., ¶ 28).

Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss at 14), such concerns do not render alternative fora inadequate and are typically accommodated with conditional orders of dismissal. See Bank of Credit and Commerce International v. State Bank of Pakistan, 273 F.3d 241, 247-48 (2d Cir. 2001) ("[T]he district court may dismiss on forum non conveniens grounds, despite its inability to make a definitive finding as to the adequacy of the foreign forum, if the court can protect the non-moving party by making the dismissal conditional."). Mr. Dikker's consent therefore satisfies the initial burden of demonstrating his amenability to process in Moscow.

The question remains whether a court in Moscow would in fact adequately permit litigation of the disputed issues at the core of Mr. Kislin's complaint. Norex Petroleum, 416 F.3d at 157. It is well established that the "'availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum,' nor on identical remedies." Id. at 158 (quoting PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 74 (2d Cir. 1998)). However, it is the movant's burden to establish that the relief available in the alternative forum is adequate. Id. at 157; Aguinda v. Texaco, Inc., 303 F.3d 470, 476 (2d Cir. 2002); Iragorri, 274 F.3d at 73. "If the movant fails to carry this burden, the forum non conveniens motion must be denied

regardless of the degree of deference accorded plaintiff's forum choice." Norex Petroleum, 416 F.3d at 157.

The defendant's submissions fail to address this issue at all, providing only the conclusory statement that "there is an available alternative forum to adjudicate the parties (sic) 'Russian' dispute -- Moscow, Russia." (Def. Memo. at 11). Such a statement is entirely insufficient to carry the defendant's heavy burden to show that the plaintiff's claims can be adequately addressed in the alternate forum. See Motown Record Co. v. iMesh.com, Inc., No. 03 Civ. 7339, 2004 WL 503720, at *6 (S.D.N.Y. March 12, 2004) (finding defendants' submissions failed to meet burden where they "f[e]ll silent" on adequacy of alternative forum's law).

"The adequacy of the foreign forum and the substance of any relevant foreign law is usually established through expert affidavits or declarations." Varnelo v. Eastwind Transport, Ltd., No. 02 Civ. 2084, 2003 WL 230741 (S.D.N.Y. Feb. 3, 2003) (citing 17 James W. Moore, Moore's Federal Practice § 111.92 (3d ed. 2002)). Courts have in some cases found defendants to have met their burden without filing affidavits where, for example, the proposed alternative forum was already in the process of hearing related claims. See, e.g., Kitaru Innovations Inc. v. Chandaria, 698 F. Supp. 2d 386, 395 (S.D.N.Y. 2010) (finding Canadian court to be adequate alternative forum based on evidence that related action

was already progressing in that forum).  On the other hand, even case law from sister courts may be an insufficient substitute for expert affidavits.  See Technology Development Co. v. Onischenko, 536 F. Supp. 2d 511, 519 (D.N.J. 2007) (finding defendant's own affidavit and case law from other courts holding Russia to be adequate alternative forum to be insufficient to carry burden).  To carry the "heavy burden," a movant must not only address the treatment of general categories of claims by the proposed alternative forum, but also the treatment of the specific subject matter in question.  See Baker v. Nippon Cargo Airlines, Nos. 09 CV 3374, 09 CV 3375, 09 CV 3377, 09 CV 3378, 2011 WL 3625103, at *14-15 (E.D.N.Y. July 25, 2011) (finding defendant to have failed to meet burden despite having offered general evidence that discrimination claims may be litigated in alternate forum, because defendant did not establish that specific type of discrimination claim at issue could be adequately heard).

Here, Mr. Dikker has not submitted affidavits regarding the treatment of fraud, breach of contract, or conversion claims under Russian law; has not provided evidence of claims similar to Mr. Kislin's being heard in Russia; and has not even cited case law finding Russia to be an adequate alternative forum for such claims. "[B]ecause [the] defendant[] failed to carry [his] burden to demonstrate that Russia affords [the] plaintiff a presently

available adequate alternative forum, the motion to dismiss on forum non conveniens grounds should [] be[] denied," and may be denied "without consideration of the third step of analysis." Norex Petroleum, 416 F.3d at 160.

C.   Balance of Interests

Even if Mr. Dikker had established an adequate alternative to this forum, he has not established that the balance of interests in this case weighs in favor of dismissal.

Upon determining that an adequate alternative forum exists, the court must balance the public and private interests affected by the choice of forum to ascertain whether the case should be adjudicated in the plaintiff's chosen forum or in the alternative forum proposed by the defendant.   Iragorri, 274 F.3d at 73-74. "The defendant bears the burden of establishing . . . that the balance of private and public interest factors tilts heavily in favor of the alternative forum."   Abdullahi v. Pfizer, Inc., 562 F.3d 163, 189 (2d Cir. 2009).

1.   Private Interest Factors

The private interest factors to be considered in adjudicating a forum non conveniens motion to dismiss include:

> "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy,

13

expeditious and inexpensive."

Iragorri, 274 F.3d at 73-74 (quoting Gilbert, 330 U.S. at 508).  In this case, these factors weigh in favor of denying the defendant's motion to dismiss.

Mr. Dikker states that "[m]ost . . . witnesses necessary to the issues in this case are located in Moscow, Russia and are not subject to this Court's subpoena power." (Def. Memo. at 13).  He identifies four Russian witnesses whom he deems "necessary" to the litigation: (1) Vadim Sachkov, the chief executive officer of one of the funds from which Mr. Dikker was allegedly to pay Mr. Kislin; (2) Vladimir Semernin, a "principal" of that same fund, "involved in the disposition of Sam Kislin's interest" in the fund and "in arrangements referred to in the complaint"; (3) Denis Demidov, the purchaser of Mr. Kislin's interest in the shares of one of the funds in question; and (4) Tatyana Runova, TRI's in-house counsel. (Def. Memo. at 13).  Mr. Dikker does not explain the subject matter of the witnesses' anticipated testimony, only stating that they "were directly involved in and are well familiar with the transactions and documents in this case." (Def. Memo. at 13).

While the availability of process to compel the testimony of important witnesses is an significant factor to consider, see Iragorri, 274 F.3d at 73-74, "in order to establish that this factor weighs in favor of dismissal, defendants must show that live

14

testimony is particularly necessary in this case, and that some witnesses will be unwilling to travel to New York." National Union Fire Insurance Co. of Pittsburgh, PA v. BP Amoco P.L.C., No. 03 Civ. 200, 2003 WL 21180421, at *6 (S.D.N.Y. May 20, 2003).  Mr. Dikker has not shown that live testimony is especially important in this case, that these witnesses would be unwilling to submit to deposition or to travel here voluntarily to testify, or that there is not an alternative means of obtaining their evidence.  Indeed, he does not even make clear the relevance of the testimony of these witnesses.  This factor therefore weighs against dismissal.  See id. (finding factor neutral where defendants did not assert that action required live testimony of foreign witnesses or that letters rogatory would be unacceptable means of obtaining testimony); ACE American Insurance Co. v. Bank of the Ozarks, No. 11 Civ. 3146, 2012 WL 3240239, at *12 (S.D.N.Y. Aug. 3, 2012) (finding factor neutral where defendant did not establish relevance of testimony of witness not subject to court's subpoena power).

Mr. Dikker also states that "[m]ost documents . . . necessary to the issues in this case are located in Moscow, Russia and are not subject to this Court's subpoena power" (Def. Memo. at 13), asserting in his Reply Memorandum that the relevant documents are in the possession of the four identified witnesses (Reply Memo. at 6).  However, as he does not identify what documents he is

referring to, it is unclear which, if any, would need to be transferred from Moscow for litigation in this forum.  Further, while he cites case law for the proposition that the cost of transporting relevant documents is an appropriate consideration (Def. Memo. at 9-10 (citing The Travelers Indemnity Co. v. S/S Alca, 710 F. Supp. 497, 500-501 (S.D.N.Y. 1989), aff'd 895 F.2d 1410 (2d Cir. 1989)), he does not specify the volume of such documents in this case or assert that transporting them would be costly.  Even assuming that the relevant documents are high in volume and actually accessible to Mr. Dikker, this is "largely a neutral factor in today's world of faxing, scanning, and emailing documents."   American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. LaFarge North America, Inc., 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007).  The potential cost of transporting documents from Moscow therefore also does not weigh in favor of dismissal.

Mr. Dikker further asserts that all potential witness testimony and documentary evidence would be in Russian.  (Def. Memo. at 12-13).  He argues that the cost of translation is an appropriate consideration for the court (Def. Memo. at 10 (citing The Travelers Indemnity Co., 710 F. Supp. at 500-01)), but again does not estimate the cost of translation in this case, nor even assert that it would be substantial.  As discussed above, Mr.

Dikker has not made the relevance of his four identified witnesses sufficiently clear, and has not identified the volume of relevant documentary evidence.   On the limited information provided, it would be improper to presume that the cost of translation would be prohibitive in this case.   Mr. Dikker asserts that the translation of testimony would be distracting to both the court and the jury (Def. Memo. at 12-13), but cites no case law indicating that this factor should be given weight in the analysis.   While the cost of translation is worthy of consideration, Mr. Dikker has not sufficiently established that it weighs in favor of dismissal in this case.

Finally, it is worth noting that litigation in this forum is geographically convenient to both parties and their counsel.   Mr. Kislin's residence and the offices of both parties' attorneys are all located in New York City, while Mr. Dikker's residence is roughly one hour away in New Jersey.   Litigation in Moscow would require both parties to travel to Russia and presumably to either fund their attorneys' travel or obtain new counsel in Russia.   This factor weighs against dismissal.

### 2.   Public Interest Factors in This Case

The public interest factors to be considered in adjudicating a _forum_ _non_ _conveniens_ motion include whether the chosen forum is congested, whether there is a relationship between the chosen forum

17

and the litigation, whether trial in the chosen forum would place the litigation out of the view of interested persons, and which jurisdiction's law would apply to the litigation. <u>Iragorri</u>, 274 F.3d at 74; <u>Gilbert</u>, 330 U.S. at 508-09. The public interest factors in this case also weigh against dismissal.

Mr. Dikker's overarching argument in favor of dismissal is that "this Russian dispute arising out of Russian transactions . . . has no connection to New York." (Def. Memo. at 2). He also asserts that this dispute will be governed by Russian law, involving "application of . . . Russian corporate law, corporate governance and structures, and Russian agency and fiduciary law and the status of the shares in Russian real estate fund." (Def. Memo. at 12-13; Declaration of Vadim Sachkov dated June 4, 2014 ("Sachkov Decl.") at 7 (asserting that because this lawsuit relates to "shares of the Russian corporation and Russian real estate fund that represent Russian real estate and consequently governed by Russian law principles under Russian substantive law," dismissal is warranted)).

Both of these arguments misunderstand the nature and scope of Mr. Kislin's claims. Although several Russian funds are referenced in the Complaint as potential sources of payment for the money allegedly owed to Mr. Kislin, these funds are not parties to the lawsuit. Mr. Dikker has not established what role, if any,

corporate law or the structure of these funds might play in this case.  Mr. Kislin's complaint alleges conversion (Compl., ¶¶ 20-22), breach of contract (Compl., ¶¶ 30-34), and fraud (Compl., ¶¶ 35-44) by Mr. Dikker.  This case therefore implicates the interests of two parties -- Mr. Kislin, a resident of New York, and Mr. Dikker, a resident of New Jersey.  This forum and its juries have an interest in contract disputes involving New York residents. Even assuming that Moscow has an interest in this dispute despite the fact that Mr. Dikker no longer resides in Russia, that interest does not overcome the relationship of the case to the chosen forum.

Further, while "[m]any _forum_ _non_ _conveniens_ decisions have held that the need to apply foreign law favors dismissal," _Piper_ _Aircraft_, 454 U.S. at 260 n.29, it is far from clear that Russian law would govern this case.  Mr. Dikker does not provide any support for his presumption that the court must apply Russian law. (Def. Memo. at 12-13; Sachkov Decl. at 7).  In diversity cases, a federal court applies the conflict of law rules of the state in which it sits.  _Klaxon_ _Co._ _v._ _Stentor_ _Electric_ _Manufacturing_ _Co._, 313 U.S. 487, 496 (1941).  In New York, courts first ask "whether there is an actual conflict of laws" because if "there is no actual conflict[,] [] New York will dispense with a choice of law analysis."  _Curley_ _v._ _AMR_ _Corp._, 153 F.3d 5, 12 (2d Cir. 1998); _see_ _also_ _International_ _Business_ _Machines_ _Corp._ _v._ _Liberty_ _Mutual_

Insurance Co., 363 F.3d 137, 143 (2d Cir. 2004).  If there is a substantive conflict between the laws of the jurisdictions in question, conflict of law analysis is necessary.  Curley, 153 F.3d at 12.  Laws are in conflict "[w]here the applicable law from each jurisdiction provides different substantive rules."   Id.   In contract cases, New York courts apply the law of the jurisdiction with "the most significant relationship to the transaction and the parties."  Zurich Insurance Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 317, 649 N.Y.S.2d 609, 612 (1994) (internal quotation marks omitted).  In tort cases, New York  engages in "interest analysis," applying the law of the jurisdiction with the greatest interest in the litigation.  See Babcock v. Johnson, 12 N.Y.2d 473, 481-82, 240 N.Y.S.2d 743, 749-50 (1963); see also Schultz v. Boy Scouts of America, 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 95 (1985) ("[T]he law of the jurisdiction having the greatest interest in the litigation will be applied and . . . the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." (alterations in original) (internal quotation marks omitted)).

Some points raised by the parties are relevant to the determination of which jurisdiction's laws apply to each of Mr. Kislin's three claims against Mr. Dikker.  However, neither party has substantively discussed Russia's contract, fraud, or conversion

laws.  It would be premature even to determine whether a choice of law analysis is necessary, let alone to decide the outcome of such an analysis, without further briefing on the matter.  This factor therefore does not weigh in favor of dismissal in this case.

<u>Conclusion</u>

Accordingly, under the three-step analysis described in <u>Iragorri</u>, 274 F.3d at 73-74, I find that (1) the plaintiff's choice of forum is owed great deference, (2) the defendant has not established that an adequate alternative forum exists, and (3) even assuming that an adequate alternative forum does exist, the private and public interests weigh in favor of the plaintiff's chosen forum.  I therefore recommend that the motion to dismiss for <u>forum non conveniens</u> (Docket no. 40) be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Paul G. Gardephe, Room 2204, 40 Foley Square, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       September 25, 2014

Copies mailed this date to:

Jeffrey Craig Dannenberg, Esq.
Kestenbaum, Dannenberg & Klein, LLP
110 East 59th Street, 25th Floor
New York, NY 10022

Alexander Berkovich, Esq.
184 Kent Avenue, Room D-318
Brooklyn, NY 11249