UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

SEMYON (SAM) KISLIN,                            14 CIV. 237 (PGG)

                Plaintiff,

    v.

SIMON DIKKER and VADIM SACHKOV,

                Defendants.

-----------------------------------------------------------x

## PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

       Plaintiff, by his attorneys, submits the following proposed findings of fact and conclusions of law, in connection with the trial of the above-entitled action, pursuant to Rule 10C of the Individual Practice Rules of Judge Paul G. Gardephe.

       References below are made to the following documents included in Plaintiff's Trial Submissions:

    i.    "Joint Pretrial Order" – the Joint Pretrial Order, dated January 7, 2016.

    ii.    "Kislin Affidavit" – the Affidavit of Plaintiff, Semyon Kislin, in Lieu of Direct Examination, sworn to March 28, 2016.

    iii.    "First Dikker Deposition" – the transcript of the deposition of Defendant, Simon Dikker, held on May 22, 2014.

    iv.    "Second Dikker Deposition" – the transcript of the deposition of Defendant, Simon Dikker, held on June 26, 2015.

### A.  Proposed Findings of Fact

1. Plaintiff is an individual who resides a 1965 Broadway (Apt. PH1B), New York, NY 10023. (Joint Pretrial Order, ¶ 8a)

2. Defendant is an individual who resides at 70 Sunset Court, Mahwah, NJ 07430 (Joint Pretrial Order, ¶ 8b)

3. Joint Stock Company TransRegionInvest ("TRI") was a Russian company formed in about 2002 by Plaintiff, Defendant, and a third individual, named Sergey Parilis, with ownership shares allocated 51% to Plaintiff (through a nominee company, Brulow Inc.), 24½% to Defendant (through a nominee company, Closed JSC "OptTorgLider"), and 24½% to Mr. Parilis (through a nominee company, InterProgress Ltd.). (Joint Pretrial Order, ¶ 8c; Kislin Affidavit, ¶8)

4. From the time of its creation until in about July 2013, TRI maintained an office in Moscow, Russia, from which a business was operated involving the investment in and development of residential real properties in the area known as Moscow Oblast, which is the region outside the City of Moscow. (Joint Pretrial Order, ¶ 8d)

5. Beginning in about 2007 and ending in 2008, Plaintiff and Defendant engaged in discussions for a buy-out of Plaintiff's ownership interest in TRI. Following negotiation over the valuation of that interest, they ultimately settled on a figure of $20 million. (Joint Pretrial Order, ¶ 8e)

6. In or about April 2008, Plaintiff and Defendant agreed that in for Plaintiff's relinquishing his shareholding interest in TRI, he would be paid the sum of $20 million, which sum Defendant planned to finance through his share of the proceeds from TRI's sale of an interest in a Russian real estate fund known as "Solid," which was operated by a

Russian joint stock company named JSC Solid Management. (Joint Pretrial Order, ¶ 8e; Kislin Affidavit, ¶ 23)

7. In compliance with his obligations under the terms of that buy-out agreement, Plaintiff relinquished his shareholding interest in TRI. (Kislin Affidavit, ¶ 26)

8. In or about April 2008, Plaintiff, either directly or through a company that he controlled, received $16 million out of the $20 million buy-out price for his TRI shareholding interest. (Joint Pretrial Order, ¶ 8f; Kislin Affidavit, ¶ 27)

9. The reason why Plaintiff received $4 million less than he had been promised for the buy-out of his TRI shareholding interest was that $4 million out of the proceeds of TRI's sale of its interest in the "Solid" fund were diverted to a man named Vladimir Semernin. (Kislin Affidavit, ¶¶ 27-28; First Dikker Deposition, 83:14 – 85:12; Second Dikker Deposition, 85:3– 91:24 and 109:15–112:14)

10. That diversion of $4 million to Vladimir Semernin was made without Plaintiff's knowledge or consent. (Kislin Affidavit, ¶ 28)

11. Defendant indicated to Plaintiff that he (Defendant) owned shares in a Russian real estate investment fund named "Solid-Podmoskovny," out of which Defendant proposed to transfer 254,556 shares to Plaintiff, based on their mutual agreement that those were the number of shares necessary to satisfy Defendant's $4 million debt to Plaintiff for the balance owed based upon the buy-out of Plaintiff's TRI shareholding interest. (Kislin Affidavit, ¶ 31)

12. Plaintiff accepted that proposal by Defendant. (Kislin Affidavit, ¶ 31)

13. No shares of Solid-Podmoskovny were ever transferred to Plaintiff, which Defendant explained at the time was due to those shares having become illiquid as a result of a financial crisis in Russia in 2008 and 2009. (Kislin Affidavit, ¶ 32)

18. In 2009, Plaintiff threatened to enforce the $4 million debt owed by Defendant by commencing a civil action against Defendant in Moscow, where the civil practice rules would have allowed for a confiscation or seizure of Defendant's assets, including his shareholding interest in TRI and affiliated entities. (Kislin Affidavit, ¶ 31)

19. In response, Defendant represented to Plaintiff that he could exchange the above-referenced shares of Solid-Podmoskovny for shares in another Russian fund, named "Russkoye Polye" no later than December 31, 2009, after which the new shares could be sold, with the proceeds to be used in a way that would result in the payment of an aggregate of $4 million to Plaintiff no later than May 31, 2010. (Kislin Affidavit, ¶¶ 33-35)

20. In reliance upon Defendant's representations, Plaintiff did not commence a civil action and, instead, accepted Defendant's proposal, after which the parties memorialized their understanding in a document that they both executed, entitled Agreement No. 12-11/1, dated 12 November 2009, with Supplementary Agreement #1 to Agreement No. 12-11/1, also executed by the parties and dated 12 November 2009, a copy of which has been stipulated into evidence as PLAINTIFF'S EXHIBIT 3. (Joint Pretrial Order, ¶ 8g; Kislin Affidavit, ¶ 36; Second Dikker Deposition, 109:5–112:14, 113:13–116:14, 127:13–129:4, and 127:13–130:10)

21. The shares of Solid-Podmoskovny were not exchanged for shares in Russkoye Polye by December 31, 2009, nor were any payments made to Plaintiff, in or before May 2010. (Kislin Affidavit, ¶ 38)

22. In 2012, Plaintiff again threatened to commence a lawsuit against Defendant in Moscow over the non-payment of $4 million. (Kislin Affidavit, ¶ 40)

23. In response, Defendant made a new proposal to Plaintiff that he would arrange for the exchange of Solid-Podmoskovny shares to shares of Russkoye Polye by May 1, 2013, after

4

which the new shares would be sold, with the proceeds to be used in a way that would result in the payment of an aggregate of $4 million to Plaintiff in or before May 31, 2013. (Kislin Affidavit, ¶ 41)

20. In reliance upon Defendant's representations, Plaintiff did not commence a civil action and instead accepted Defendant's proposal, after which the parties memorialized their understanding in a document that they both executed, entitled Agreement No. 01-1809, dated 18 September 2012, a copy of which has been stipulated into evidence as PLAINTIFF'S EXHIBIT 4. (Joint Pretrial Order, ¶ 8g; Kislin Affidavit, ¶ 41; Second Dikker Deposition, 134:3–134:12)

21. The shares of Solid-Podmoskovny were not exchanged for shares in Russkoye Polye, nor were any transfer of shares or payments made to Plaintiff, in or before May 2013. (Kislin Affidavit, ¶ 42)

22. No payments were made, nor was anything of value transferred, to Plaintiff, either directly or indirectly, at any time after May 2013 in connection with the buy-out of his TRI shares. (Kislin Affidavit, ¶ 42; Second Dikker Deposition, 134:13–134:23 and 135:21–126:12)

23. TRI's business operations were discontinued in July 2013, when government officials seized or destroyed the company's computers and servers. (First Dikker Deposition, 71:19–72:21)

24. Since July 2013, Defendant has had no assets in Russia. (First Dikker Deposition, 39:24–41:6)

**B.     Proposed Conclusions of Law**

*The Contract Claim*

1. In about April 2008, Plaintiff and Defendant entered into a verbal agreement (the "Contract"), pursuant to which Plaintiff was to relinquish his shareholding interest in TRI that he owned through a nominee company.

2. As consideration for Plaintiff's relinquishing his shareholding interest in TRI, Defendant agreed to pay to Plaintiff the sum of $20 million.

3. Notwithstanding Plaintiff's satisfying his obligations under the Contract, Defendant paid to Plaintiff $16 million, rather than the $20 million that had been promised.

4. Plaintiff's Exhibit 1 evidences a personal obligation by Defendant to pay to Plaintiff the balance of $4 million due under the Contract.

5. Plaintiff's Exhibit 2 further evidences the personal obligation by Defendant to Plaintiff the balance of $4 million due under the Contract.

6. In breach of the Contract, Defendant failed to pay to Plaintiff any part of the $4 million due that was due.

7. As a result of the foregoing, Defendant is liable to Plaintiff for the principal amount of $4,000,000, plus interest from April 2008.

*The Fraud Claim*

8. Defendant represented to Plaintiff that Defendant personally owned shares in a Russian land fund named Solid-Podmoskovny that were of sufficient value to cover Defendant's $4 million obligation to Plaintiff.

9. Defendant further represented that, although his Solid-Podmoskovny shares were illiquid, those shares could be exchanged for shares in another Russian land fund named Russkoye Polye, which could thereafter be used to fund the payment to Plaintiff of $4 million.

10. In justifiable reliance upon Defendant's foregoing representations, Plaintiff twice – once in 2009, and once in 2012 – withheld on a threatened lawsuit against Defendant in Russia at a time when the commencement of such a lawsuit would have enabled Plaintiff to enforce his claim against assets that Defendant held – namely, his ownership interests in TRI and affiliated entities.

11. Defendant's representations were false, and defendant knew them to be false at the time they were made, but defendant made the representations in order to induce forbearance by Plaintiff on the commencement of a lawsuit.

12. As a result of Defendant's actions, Plaintiff was damaged in the principal amount of $4,000,000, plus interest from April 2008.

Dated: March 28, 2016

                        Respectfully submitted,

                        **KESTENBAUM, DANNENBERG & KLEIN, LLP**
                        Attorneys for Plaintiff

                        By: _____
                              Jeffrey Q. Dannenberg (JD-3270)

                        260 Madison Avenue (17th Floor)
                        New York, NY 10016
                        (212) 483-3370
                        Email: jdannenberg@kdklaw.com