UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

SEMYON (SAM) KISLIN,                                14 CIV. 237 (PGG)

                    Plaintiff,

      v.

SIMON DIKKER and VADIM SACHKOV,

                    Defendants.

------------------------------------------------------------x

## PLAINTIFF'S TRIAL MEMORANDUM OF LAW

This memorandum is submitted on behalf of Plaintiff, Semyon Kislin ("Plaintiff"), in support of his claims for breach of contract and fraudulent misrepresentation against the sole defendant, Simon Dikker ("Defendant").

### Statement of Facts

Plaintiff and Defendant, through nominee companies, owned 51% and 24½% shareholding interests, respectively, in a Russian Joint Stock Company named TransRegionInvest ("TRI"), which was formed in about 2002 and maintained an office in Moscow, Russia. TRI's business involved the investment in, and development of, residential real properties in the area known as Moscow Oblast, which is the region outside of the City of Moscow.

During the period from late 2007 until April 2008, Plaintiff and Defendant engaged in discussions and negotiations over a buy-out by Defendant of Plaintiff's shareholding

interest in TRI. Following negotiation over the valuation of that interest, they ultimately settled on a figure of $20 million. By verbal agreement made in April 2008, Plaintiff and Defendant agreed that in exchange for Plaintiff's relinquishing his shareholding interest in TRI, Defendant would arrange for him to be paid the sum of $20 million, which sum Defendant planned to finance though his share of the proceeds from TRI's sale of an interest in a Russian real estate investment fund known as "Solid."

In compliance with his obligations under the terms of that buy-out agreement, Plaintiff relinquished his shareholding interest in TRI. However, Defendant defaulted on his obligation under the agreement, in that Plaintiff received only $16 million out of the $20 million buy-out price that Defendant had promised. Apparently, the reason why Plaintiff received $4 million less than he had been promised was that $4 million out of the proceeds of TRI's sale of its interest in the "Solid" fund had been diverted to a man named Vladimir Semernin, who claimed a right to the funds due to some personal debt owed to him by Defendant.

In order to satisfy his outstanding $4 million debt to Plaintiff, Defendant indicated that he would arrange for the sale of shares that he (Defendant) owned in a Russian real estate investment fund named "Solid-Podmoskovny," out of which Defendant proposed to transfer 254,556 shares to Plaintiff, based on their mutual agreement that those were the number of shares necessary to satisfy Defendant's $4 million debt to Plaintiff for the balance owed based upon the buy-out of Plaintiff's TRI shareholding interest. Plaintiff accepted that proposal, but Defendant never transferred any such shares to Plaintiff.

In 2009, Plaintiff threatened to enforce the outstanding $4 million debt owed by Defendant by commencing a civil action against Defendant in Moscow, where the civil practice rules would have allowed for a confiscation or seizure of Defendant's assets, including his

shareholding interest in TRI and affiliated entities. In response, Defendant made an alternative proposal, representing that he could exchange the above-referenced shares of Solid-Podmoskovny for shares in another Russian fund, named "Russkoye Polye" no later than December 31, 2009, after which the new shares could be sold, with the proceeds to be used in a way that would result in the payment of an aggregate of $4 million to Plaintiff no later than May 31, 2010. In reliance upon Defendant's representations, Plaintiff did not commence a civil action and instead accepted Defendant's proposal.

Thereafter, the parties memorialized their understanding in a writing that they both executed, entitled Agreement No. 12-11/1, dated 12 November 2009, with Supplementary Agreement #1 to Agreement No. 12-11/1, also executed by the parties and dated 12 November 2009, a copy of which has been stipulated into evidence as PLAINTIFF'S EXHIBIT 3. Notwithstanding the terms of that Agreement, the shares of Solid-Podmoskovny were not exchanged for shares in Russkoye Polye by December 31, 2009, nor were any payments made to Plaintiff, in or before May 2010.

In 2012, Plaintiff again threatened to commence a lawsuit against Defendant in Moscow over the non-payment of Defendant's outstanding $4 million debt, in response to which Defendant made a new proposal to Plaintiff that he would arrange for the exchange of Solid-Podmoskovny shares to shares of Russkoye Polye by May 1, 2013, after which the new shares would be sold, with the proceeds to be used in a way that would result in the payment of an aggregate of $4 million to Plaintiff in or before May 31, 2013. In reliance upon Defendant's representations, Plaintiff did not commence a civil action and instead accepted Defendant's proposal.

Thereafter, the parties memorialized their understanding in a document that they both executed, entitled Agreement No. 01-1809, dated 18 September 2012, a copy of which has been stipulated into evidence as PLAINTIFF'S EXHIBIT 4. Notwithstanding the provisions of that Agreement, the shares of Solid-Podmoskovny were not exchanged for shares in Russkoye Polye, nor were any transfer of shares or payments made to Plaintiff, in or before May 2013.

No payments were made by Defendant, nor was anything of value transferred, to Plaintiff, either directly or indirectly, at any time after May 2013 in connection with the buy-out of his TRI shares. TRI's business operations were discontinued in July 2013, when government officials seized or destroyed the company's computers and servers. Since July 2013, Defendant has had no assets in Russia.

## Legal Issues

Notwithstanding Defendant's having raised in his Answer a contention that Russian law should be applied to determine the outcome of this action, it is our understanding that this contention has been withdrawn, and both sides concede that the two common-law claims upon which Plaintiff is proceeding to trial – breach of contract, and fraudulent misrepresentation – should be determined based on New York law.

### I.   *Plaintiff is Entitled to Damages for his Breach of Contract Claim*

Although both Plaintiff and Defendant owned their respective shareholding interests in TRI through Russian nominee companies, the verbal contract that was made in April 2008 for the buy-out of Plaintiff's shareholding interest in TRI for $20 million was entered into between Plaintiff and Defendant individually. Similarly, the parties confirmed in writing – in

4

PLAINTIFF'S EXHIBIT 3 and PLAINTIFF'S EXHIBIT 4 – that the $4 million obligation that remained outstanding after Plaintiff received only $16 million of the agreed-upon buy-out price was an obligation owed by Defendant personally to Plaintiff personally.

Therefore, there should be no issue that Plaintiff has standing to bring this contract claim against Defendant, and indeed no standing defense was raised in Defendant's Answer.

It is respectfully submitted that no in depth analysis of New York's common law for contract claims is necessary. The elements of a breach of contract claim in New York are: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004).

In short, Plaintiff satisfied his obligation under the parties' contract by relinquishing his share of this TRI shareholding interest, but Defendant did not satisfy in full his obligation, inasmuch as Plaintiff received only $16 million of the $20 million that he had been promised.

Therefore, it is respectfully submitted that Plaintiff is entitled to recover from Defendant the principal sum of $4 million, plus interest from April 2008.

## II. *Plaintiff is Entitled to Damages for his Breach of Contract Claim*

"Under New York law, the elements of common law fraud are 'a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff.'" *Chanayil v Gulati*, 169 F.3d 168, 171 (2d Cir. 1999) (quoting *Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970-71 (2d Cir. 1987)).

Here, Defendant represented to Plaintiff that (i) Defendant personally owned shares in a Russian land fund named Solid-Podmoskovny that were of sufficient value to cover Defendant's $4 million obligation to Plaintiff, and (ii) although Defendant's Solid-Podmoskovny shares were illiquid, those shares could be exchanged for shares in another Russian land fund named Russkoye Polye, which could thereafter be used to fund the payment to Plaintiff of $4 million. In justifiable reliance upon Defendant's foregoing representations, Plaintiff twice – once in 2009, and once in 2012 – withheld on a threatened lawsuit against Defendant in Russia at a time when the commencement of such a lawsuit would have enabled Plaintiff to enforce his claim against assets that Defendant held – namely, his ownership interests in TRI and affiliated entities.

As set forth in paragraph 47 of the Kislin Affidavit in Lieu of Direct Testimony, when Plaintiff confronted Defendant shortly before TRI's business was terminated by Russian authorities in July 2013, and Defendant's assets in Moscow thereby became worthless, Defendant's response to Plaintiff was, "You made enough money." It is respectfully submitted that this statement, combined with Defendant's utter lack of achieving any of the transactions that he had represented to Plaintiff would be completed exposes the above representations as having been false, and Defendant's knowing them to be false at the time they were made, but Defendant made the representations in order to induce forbearance by Plaintiff on the commencement of a lawsuit in 2009 or 2012. It is an accepted rule that forbearance from action in reliance upon the intentional misrepresentation of another constitutes actionable fraud. *See, e.g., Channel Master Corp. v. Aluminum Ltd.,* 4 N.Y.2d 403, 407, 176 N.Y.S.2d 259, 262, 151 N.E.2d 833, 835 (1958); *see also* Restatement Second of Torts § 525 ("one who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another

to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation").

Therefore, it is respectfully submitted that Plaintiff is entitled to recover from Defendant the principal sum of $4 million, plus interest from April 2008.

### Conclusion

For the foregoing reasons, Plaintiff respectfully requests judgment in his favor in the principal sum of $4,000,000.00, plus interest from April 2008.

Dated: March 28, 2016

Respectfully submitted,

**KESTENBAUM, DANNENBERG & KLEIN, LLP**
Attorneys for Plaintiff

By: _____
Jeffrey C. Dannenberg (JD-3270)

260 Madison Avenue (17th Floor)
New York, NY 10016
(212) 483-3370
Email: jdannenberg@kdklaw.com